UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | |
|---|---|
| HEIDI M. ENDRES, | CIVIL ACTION NO. 2:15-CV-026-KKC |
| Plaintiff, | |
| V. | OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. [DE 6; 7]. The Plaintiff, Heidi Endres, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief from an administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, will reverse the Commissioner's decision and remand the matter for further consideration consistent with this opinion.

## I. OVERVIEW OF THE PROCESS

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her

physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)).

The claimant bears the burden of proof through the first four steps of the analysis; but if the ALJ reaches the fifth step without finding the claimant disabled, then the burden shifts to the Commissioner. *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). The Commissioner satisfies the burden of proof at the fifth step by finding that the claimant is qualified for—and capable of performing—jobs that are available in the national economy and may rely upon the testimony of a vocational expert ("VE") regarding the range of potential jobs. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423, 425 (6th Cir. 2008).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Heidi Endres ("Claimant") filed her claim for DIB on December 28, 2011, alleging an onset date of December 15, 2011. [TR 15]. The agency denied her application initially and upon reconsideration. [TR 15]. Claimant requested review by an ALJ, and a hearing was held on September 24, 2013. [TR 30–56]. The ALJ subsequently issued an unfavorable decision on November 7, 2013. [TR 12–25].

At the time the ALJ's decision was rendered, Claimant was 43 years old. [TR 34]. Claimant has a Master of Fine Arts (MFA) degree and has past relevant work as an art professor at Northern Kentucky University. [TR 36; DE 6 at 3]. She alleges disability due to

migraine headaches, depression, anxiety, bipolar disorder, and post-traumatic stress disorder. [DE 6 at 3.] Claimant's insured status expires on December 31, 2016. [TR 17].

First, the ALJ determined that Claimant has not engaged in substantial gainful activity since her alleged onset date of December 15, 2011. [TR 17]. Second, the ALJ found that Claimant suffers from the following severe impairments: migraine headaches, bipolar disorder, and anxiety disorder – not otherwise specified. [TR 17]. Third, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [TR 18-19].

Next, the ALJ reviewed the record to determine Claimant's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In finding Claimant's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication; (v) additional treatment; (vi) additional measures used to relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529. After reviewing all of the evidence, the ALJ determined that Claimant has the RFC to perform light work with simple, non-tandem tasks, without strict production demands, with occasional interaction with supervisors, and with occasional to superficial interaction with co-workers and the general public, but must avoid concentrated exposure to hazards, including moving machinery and unprotected heights, avoid all exposure to vibration, and avoid concentrated exposure to extreme heat and cold. [TR 19].

After establishing Claimant's RFC, the ALJ continued to the fourth step. The ALJ asked the VE whether a hypothetical individual with Claimant's vocational factors and RFC could work as a professor [TR 52]. The VE testified that this hypothetical individual could not perform any past relevant work. [TR 52]. Thus, the ALJ moved to the fifth step. The ALJ asked if this hypothetical individual could make an adjustment to other work and the VE noted that this hypothetical individual could perform a number of other jobs, including general factory worker, sorter, and cleaner at the light level. [TR 52]. Therefore, the ALJ found Claimant not disabled. [TR 24-25].

The ALJ's decision that Claimant is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied Claimant's request for review. [TR 1-2]. Claimant has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm. of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec. of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the

4

Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## IV. ANALYSIS

Claimant presents four main issues for review. Claimant argues that the ALJ: (1) failed to evaluate the frequency, severity, and duration of her migraine headaches; (2) improperly weighted medical and non-medical evidence in the record, including opinions of treating sources; (3) erred when evaluating Claimant's credibility; and (4) failed to adequately include the limitations on Claimant's concentration, persistence, or pace in the hypothetical questions to the vocational expert and in the RFC[1]. Claimant's first three arguments lack merit. However, the ALJ's hypothetical questions to the vocational expert did not adequately reflect the limitations on Claimant's concentration, persistence, or pace. Therefore, the ALJ's determination that Claimant was able to perform a substantial number of other jobs was not supported by substantial evidence.

1. The ALJ did not err in considering and evaluating Claimant's migraine headaches

Claimant argues that the ALJ's analysis of Claimant's migraine headaches was inadequate in various ways. The Court finds that the ALJ properly considered Claimant's subjective statements as well as the medical evidence regarding her migraine headaches, and reasonably determined that while severe, they did not preclude her from performing unskilled light work with several additional limitations to accommodate her migraines.

Claimant argues that the ALJ erred by citing a March 2011 medical record because that record pre-dated the alleged onset date of December 15, 2011. [DE 6 at 5-6.] However, the

---

[1] The Court combined Claimant's second and fifth arguments because both arguments deal with limitations on Claimant's concentration, persistence, or pace. *See* [DE 6 at 4-5], labeled "Summary of Argument."

ALJ cited the March 2011 record as evidence that "there had been no change in the frequency or severity of her migraines" when she was treated in May of 2012, which is after the alleged onset date. It was not an error for the ALJ to cite the March 2011 record as a point of comparison for other records that postdate the alleged onset date to illustrate that there was no change in Claimant's migraine headaches.

Next, Claimant argues that the ALJ erred by failing to evaluate the headaches under Listing 11.03, the listing for epilepsy. [DE 6 at 6.] Claimant cites an example from the Program Operations Manual System (POMS) in support, *see* [DE 6 at 15-19.], and argues that the attached POMS excerpt "refers to headaches as possibly being equivalent to this Listing." [DE 6 at 6.] Even recognizing that headaches might be medically equivalent to the Listing in certain cases, the argument is not persuasive in this case. First and foremost, Claimant completely ignores that the ALJ specifically stated that "*all* applicable Listings were considered, specifically 11.00, *Neurological* ...," which clearly undercuts her argument that the ALJ "failed to evaluate" Listing 11.03. [TR 18.] Moreover, Claimant did not show functional limitations comparable to a seizure disorder. *See McGhee v. Astrue*, No. CIV. 3:09CV493, 2010 WL 1945801, at *6 (E.D. Va. Mar. 31, 2010). Listing 11.03 requires "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." 20 C.F.R. part 404, subpt. P, App. 1 § 11.03. The ALJ found that Claimant's impairments cause only mild restriction in daily living. [TR 18.]   The record supports the ALJ's finding that Claimant's impairments did not meet or medically equal any Listing.

Claimant also argues that the ALJ failed to evaluate all of her impairments in combination as required by 20 C.F.R. 404.1523. [DE 6 at 7.] Again, Claimant ignores that the ALJ expressly stated that she considered the combined effects of all of Claimant's

impairments. The ALJ found that "Claimant does not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments." [TR 18.] (emphasis added). The ALJ again specifically noted that she considered Claimant's impairments "singly and in combination." [TR 18.]  Therefore, the ALJ fulfilled her obligation to consider Claimant's impairments in combination. *Johnson v. Chater*, 87 F.3d 1315 (6th Cir. 1996) ("The ALJ stated that he evaluated [the claimant's] impairments in combination. Therefore, no further discussion is required by the ALJ.").

Claimant's final argument regarding the migraines is that the ALJ failed to "set out a function by function assessment of the physical residual functional capacity with regard to the headaches, as required under Ruling 96-8p (1996)." [DE 6 at 6.] Claimant does not develop this bare contention. Presumably, Claimant is arguing that the ALJ failed to discuss the limiting effects that the migraines had on Claimant's physical abilities. This argument clearly fails because the ALJ explicitly discussed the physical impairments – or lack thereof – caused by Claimant's migraines. [TR 20-21.] The ALJ noted the results of physical examinations from May 2012 and November 2012 were unremarkable with no neurological findings. [TR 20.] She further noted that Claimant "did not report any vision loss, hearing loss, vertigo, lightheadedness/fainting, or facial pain" and "did not report having cluster headaches, tension headaches, vision loss, dizziness, or focal weakness." [TR 20.] The ALJ concluded that the RFC restricting Claimant "to light level work with additional non-exertional limitations fully accommodates the claimant's history of migraines." [TR 20.] Thus, the ALJ clearly assessed the nature and extent of Claimant's physical limitations caused by her migraines when determining her RFC as required by SSR 96-8 and 20 CFR 404.1545(b) and 416.945(b).

7

2. The ALJ properly discounted certain medical and non-medical opinions.

Claimant argues that the ALJ assigned improper weight to the opinions of Dr. Caudill, Dr. McElheney, and Ms. Montgomery. The Court finds that the ALJ did not err in her treatment of these opinions.

The ALJ afforded "some weight" to Dr. Caudill's opinion, but gave little weight to the Global Assessment of Functioning (GAF) score of 48 that he assigned to Claimant. [TR 23.] The ALJ explained that she found the GAF score, which indicated "serious symptoms and serious difficulties in social functioning," was internally inconsistent in that it conflicted with Dr. Caudill's determination that the claimant is only "mildly to moderately" impaired in her ability to interact effectively with others. [TR 23.] An ALJ must consider the consistency of an opinion. 20 C.F.R. §§404.1527(c)(4); 416.927(c)(4). An ALJ may find that a doctor is less credible where the doctor's assessments are inconsistent. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc). The internal inconsistency in Dr. Caudill's report was a valid ground for discounting the GAF score he assigned to Claimant.

Next, Claimant argues that Dr. McElheney and Ms. Montgomery are treating sources whose opinions are entitled to controlling weight. The ALJ properly found that Ms. Montgomery is not entitled to controlling weight because she is not an acceptable medical source, and provided good reasons for discounting Dr. McElheney's opinion.

First, as to Ms. Montgomery, Claimant is incorrect that she is a treating source. As the ALJ stated, Ms. Montgomery was Claimant's counselor, but she is not a psychiatrist or psychologist, so she is not an acceptable medical source. [TR 23.]; 20 C.F.R. §§ 404.1502; 404.1513.  Furthermore, the ALJ noted that Ms. Montgomery opined that Claimant is not able to function successfully in a professional capacity. [TR 23.] The ALJ observed that such

8

an opinion is a determination reserved to the Commissioner, so it is not entitled to any special significance. *See* 20 C.F.R. § 404.1527. Thus, the ALJ correctly found that Ms. Montgomery's opinion was not entitled to controlling weight.

Dr. McElheney is a treating physician, but the ALJ articulated good reasons for discounting her opinion. The opinions of treating physicians, "medical professionals most able to provide a detailed, longitudinal picture," are *generally* afforded the greatest deference. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). But "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)). The ALJ can reject the opinion of a treating physician "if good reasons are identified for not accepting it." *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) (holding that an ALJ may reject the opinion of a treating physician if the treating physician's opinion is divorced from supporting objective evidence). The Sixth Circuit has instructed that "[w]here the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, [it] generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 175-76 (6th Cir. 2009).

As the ALJ noted, Dr. McElheney "assigned the claimant with disabling limitations, such as marked difficulties in social functioning and maintaining concentration, persistence, or pace." [TR 23; 374.] The ALJ discounted Dr. McElheney's opinion for two reasons. First, the ALJ found that her opinion was not supported by the medical record,

9

which the ALJ described in detail in the preceding pages of the decision. *See* [TR 19-23.] In particular, the ALJ noted that Dr. McElheney's opinion was contradicted by the fact that Claimant was able to work for several years with the same mental health problems and admitted that her medications helped a lot with her symptoms. [TR 23.] Inconsistency with other medical evidence in the record is a valid reason for discounting the opinion of a treating physician. *Price*, 342 F. App'x at 175-176.

Second, the ALJ noted that Dr. McElheney assigned Claimant a GAF score of "40/60," and found that this "vast range" was not helpful in determining Claimant's functional abilities. [TR 23; 373.] Dr. McElheney did not provide an explanation for these divergent scores. *See* [TR 373.] This was also a valid reason for limiting the weight given to Dr. McElheney's opinion. 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The ALJ provided good reasons for discounting Dr. McElheney's opinion, so it was not an error to give little weight to her opinion.

3. The ALJ did not err in determining that Claimant's allegations were less than credible.

The ALJ found that "claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible" because "the nature and degree of pain and functional limitations alleged by the claimant is not supported by the medical evidence." [TR 21-22.] Claimant argues that this finding was erroneous for various reasons, none of which have merit. The ALJ's credibility finding was supported by substantial evidence.

There is an established two-step procedure for assessing the credibility of a claimant's statements. First, the ALJ must determine whether a claimant has impairments that could reasonably cause the alleged symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p,

1996 WL 374186, at *2. Once the ALJ identifies such impairments, the ALJ must evaluate the record to determine what limitations the impairments actually cause, by considering whether the claimant's complaints are supported by the record as a whole. 20 C.F.R. §404.1529(c); SSR 96-7p, 1996 WL 374186, at *2. The ALJ followed this mandated procedure when assessing Claimant's credibility. *See* [TR 20; 22.]

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Nevertheless, an ALJ's credibility findings must still be supported by substantial evidence. *Id.*

At the first step, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. [TR 22.] However, the ALJ found that Claimant's complaints lacked credibility because they were not supported by the medical evidence in the record. [TR 21-22.] The ALJ noted that claimant had a limited history of treatment for her migraines, but when she did receive treatment, "she had unremarkable physical examination findings with no positive neurological signs" and "did not report having any severe difficulties such as vision loss, vertigo, lightheadedness/fainting, or facial pain." [TR 21.] The ALJ pointed out that Claimant herself noted significant improvement in her migraines due to medication and testified at the hearing that her migraine medications worked "moderately to good." [TR 21-22; 41.] As to Claimant's allegations regarding her mental impairments, the ALJ noted contradictory evidence from the record, including the fact that Claimant was able to work with good earnings for several years with the same mental health problems, treatment notes from Family Practice of Northern Kentucky which repeatedly indicated that

11

Claimant had no unusual anxiety or depression, and finally Claimant's history of non-compliance with taking her prescribed medication despite its benefits. [TR 22.] The ALJ also noted that Claimant reported leaving her job as a professor in part because she was expected to do lectures rather than work in the studio with students, but "this was of no interest to her." [TR 22; 360.] Thus, the ALJ cited specific evidence in the record that undermined Claimant's allegations about the severity of her impairments. This was a valid reason for finding that Claimant's statements were "not entirely credible." [TR 22]; *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

Claimant argues that "the ALJ's citation to improvement" is improper because "improvement is measured from a baseline, or else an ALJ could always use improvement to deny a claim." [DE 6 at 11.] Claimant is referring to the ALJ's statement that "The claimant also noted significant improvement in her migraines due to medications." [TR 22.] Here, the ALJ was simply describing Claimant's own statements that her medicine was "working well" and "seemed to have helped." [TR 261.] Therefore, this case is distinguished from *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 493 (6th Cir. 2011), which Claimant cites. In *Boulis-Gasche*, an ALJ improperly relied on a doctor's statement that Claimant was "feeling better" to conclude that the Claimant's mental impairment had subsided. *Id.* The Court found that the ALJ improperly substituted his own judgment for that of a doctor. *Id.* In this case, the ALJ made no such finding. Rather, the ALJ merely included Claimant's own statements about her improvement due to medication while assessing Claimant's credibility.

Lastly, Claimant argues that the ALJ failed to address the factors stated in 20 C.F.R. § 404.1529. [DE 6 at 11.] § 1529(c)(3) lists several factors that an ALJ will "consider." This does not obligate an ALJ to explicitly analyze each factor. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008) (distinguishing requirement that ALJ "consider" from requirement that he give "good reasons"). Even so, the only factor that Claimant appears to actually reference is factor (iv) regarding medication. *See* [DE 6 at 11.] The ALJ discussed Claimant's medication at least twice while analyzing Claimant's allegations about her symptoms, so this argument is meritless. *See* [TR 22.]

4. The ALJ's hypothetical questions failed to fully incorporate Claimant's limitations.

Claimant's final argument focuses on the limitations on her concentration, persistence, or pace. [DE 6 at 7-9; 12-13.] Under *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), this case must be remanded for further consideration. The ALJ failed to adequately account for the limitations on Claimant's concentration, persistence, or pace in the questions that she posed to the vocational expert. Since the hypothetical questions did not fully describe Claimant's limitations, the vocational expert's conclusion that Claimant could perform other work cannot serve as substantial evidence supporting the ALJ's determination at step five of the sequential analysis.

At step five, the ALJ must determine whether a claimant is qualified for—and capable of performing—jobs that are available in the national economy and may rely upon the testimony of a vocational expert ("VE") regarding the range of potential jobs. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423, 425 (6th Cir. 2008). However, "in order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question

13

must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504.

The present case is factually analogous to *Ealy*. In *Ealy,* an ALJ credited a certain doctor's assessment of the claimant. *Id.* at 514. That doctor stated that the claimant retained the mental ability to "sustain attention to complete repetitive tasks for two-hour segments over an eight hour day where speed was not critical." *Id.* at 516. The ALJ posed a hypothetical question to a VE that stated, in relevant part, "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.*

The Sixth Circuit found that the ALJ's "streamlined hypothetical omitted [the doctor's] speed- and pace-based restrictions completely." *Id.* The Court explained that "[t]he hypothetical posed by the ALJ should have included the restriction that Ealy could work two-hour segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.* The Court concluded that "the controlling hypothetical inadequately described Ealy's limitations," so the vocational expert's opinion that Ealy could perform other work was not substantial evidence. *Id.* at 517. Therefore, the Court remanded the case for further consideration. *Id.*

In the present case, the ALJ noted that a state agency psychological consultant reviewed Claimant's medical record. [TR 18.] The ALJ gave "significant weight" to these assessments, stating that they were "consistent with the medical record," and "accept[ed] them as an accurate representation of the claimant's mental status." [TR 18.] The assessments contain a limitation on Claimant's abilities that is almost identical to the limitation discussed by the Court in *Ealy*. Specifically, the assessments state that, regarding Claimant's "sustained concentration and persistence," Claimant was able to "carry out above noted instructions for 2 hr segments over an 8 hour workday, 5 days per

14

week." [TR 66, 83.] Just as in *Ealy*, the ALJ in this case posed a hypothetical question that asked the VE to consider an individual limited to "simple, routine, non-tandem tasks without strict production demands," but did not mention the two hour limit [TR 51.] The ALJ ultimately incorporated the limitations stated in the hypothetical into Claimant's RFC. [TR 19.] Thus, this case closely parallels *Ealy*.

Given the factual similarity to *Ealy*, this case must be remanded. The ALJ gave "significant weight" to the medical assessments containing the two hour limit because they were an "accurate representation of the claimant's mental status," yet failed to incorporate that restriction into the hypothetical questions. As the Court in *Ealy* found, limiting the hypothetical individual to simple, non-routine tasks does not adequately reflect Claimant's limitations because she may be unable to adequately concentrate on even simple, routine tasks. *See also Edwards v. Barnhart,* 383 F.Supp.2d 920, 930–31 (E.D.Mich.2005) (hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."). Presumably Claimant could still find work even with this limitation because many jobs provide employees with breaks at two hour intervals throughout the day, *see, e.g.,* SSR 96-9P, 1996 WL 374185 (explaining that to perform sedentary work, a person must be able to sit for "6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."), but the Sixth Circuit has clearly held that the omission of a time restriction under similar circumstances warrants remand. A vocational expert should determine whether a significant number of jobs exist that can accommodate Claimant's two hour restriction.

15

The Commissioner cites Smith-*Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014), as grounds for upholding the limitations stated by the ALJ in this case. [DE 7 at 10.] However, the Court in *Smith-Johnson* explicitly distinguished *Ealy* because the ALJ in that case credited a doctor who "did not place any concrete functional limitations on [the claimant's] abilities to maintain attention, concentration, or pace." *Id.* at 436-37. In short, there was no two hour limit in *Smith-Johnson*. The present case clearly cannot be distinguished from *Ealy* on that basis.

This case is also distinguished from *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001). The ALJ in *Smith* found that a doctor's assessment containing the relevant limitation was not credible. Therefore, the ALJ was justified in omitting the limitation from the hypothetical questions. In this case, however, the ALJ accepted and relied on the physician assessments that included the two hour limit, so it was improper to omit that limitation from the hypothetical questions. *See Ealy*, 594 F.3d at 517.

The ALJ credited medical assessments that stated Claimant could maintain concentration and carry out instructions for two hour segments over an eight hour workday. However, the ALJ failed to account for this time restriction when posing hypothetical questions to the VE. Therefore, the ALJ's determination that Claimant was not disabled because she was able to perform a substantial number of other jobs was not supported by substantial evidence. Although the ALJ did not err in the other respects alleged by Claimant, remand is appropriate under *Ealy* for further consideration of this issue.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Claimant's motion for summary judgment [DE 6] is **GRANTED**;

2. The Commissioner's motion for summary judgment [DE 7] is **DENIED**;

16

3. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this opinion; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated March 29, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY